PD-0123-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 3/2/2015 11:47:52 AM
Accepted 3/2/2015 2:26:18 PM
ABEL ACOSTA
CLERK

## No. PD-0123-15

### IN THE TEXAS COURT OF CRIMINAL APPEALS
#### AT AUSTIN, TEXAS

———————————

### JAMES FERNANDEZ,
**Appellant/Petitioner**

v.

### THE STATE OF TEXAS,
**Appellee/Respondent**

———————————

*From the Fourth Court of Appeals in San Antonio, Texas*
*Cause 04-14-00039-CR*
*and*
*the 83rd Judicial District Court*
*of Val Verde County, Texas*
*Cause No. 12716CR*

———————————

### PETITION FOR DISCRETIONARY REVIEW

———————————

FILED IN
COURT OF CRIMINAL APPEALS

March 2, 2015

ABEL ACOSTA, CLERK

**James Gerard McDermott, II**
**Thompson Salinas**
**Rickers & McDermott, LLP**
**8140 N. Mopac**
**Westpark 4, Suite 250**
**Austin TX 78759**
**512.201.4099**
**512.298.1129 (facsimile)**
**james@centraltexaslawyers.com**
*Attorney for Appellant*

***ORAL ARGUMENT REQUESTED***

# LIST OF PARTIES

**TRIAL COURT JUDGE**
Hon. Stephen Ables
Kerr County Courthouse
700 Main Street, Second Floor
Kerrville, Texas 78028

**APPELLANT/PETITIONER**
James Fernandez

      **APPELLANT'S ATTORNEYS AT TRIAL**

| | |
|---|---|
| Daniel A. Sanchez | Robert Garza |
| State Bar No. 24004064 | State Bar No. 07742800 |
| Law Offices of Daniel A. Sanchez | Law Offices of Robert Garza |
| 501 E. Tyler Avenue | 2116 Avenue F, Suite 5 |
| Harlingen TX 78550 | Del Rio TX 78840 |

      **APPELLANT'S ATTORNEY ON APPEAL**
James Gerard McDermott, II
State Bar No. 24041438
Thompson Salinas Rickers & McDermott, LLP
8140 N. Mopac
Westpark 4, Suite 250
Austin TX 78759

**APPELLEE/RESPONDENT**
The State of Texas

      **APPELLEE'S ATTORNEY AT TRIAL & ON APPEAL**
Lance Kutnick
State Bar No. 00791058
Assistant Attorney General
District Attorney Pro Tem
Office of the Attorney General
PO Box 12548
Austin TX 78711

# TABLE OF CONTENTS

| | |
|---|---|
| LIST OF PARTIES | i |
| TABLE OF CONTENTS | ii |
| TABLE OF AUTHORITIES | iii |
| STATEMENT REGARDING ORAL ARGUMENT | 1 |
| STATEMENT OF THE CASE | 1 |
| STATEMENT OF PROCEDURAL HISTORY | 1 |
| QUESTIONS PRESENTED FOR REVIEW | 2 |
| STATEMENT OF FACTS | 2 |
| REASONS FOR GRANTING REVIEW | 5 |
| ARGUMENT | 5 |
| QUESTION I | 5 |
| QUESTION II | 9 |
| PRAYER | 11 |
| CERTIFICATE OF COMPLIANCE | 12 |
| CERTIFICATE OF SERVICE | 12 |

# TABLE OF AUTHORITIES

## CASES

*Bozeman v. State*, 2012 Tex. App. LEXIS 223 (Tex. App.—Texarkana Jan. 12, 2012, no pet.) — 6, 8-9

*Celis v. State*, 416 S.W.3d 419 (Tex. Crim. App. 2013) — 10

*Cruz v. State*, Tex. App. LEXIS 9002 (Tex. App.—El Paso Nov. 15, 2007, pet. ref'd) — 10

*Daugherty v. State*, 387 S.W.3d 654 (Tex. Crim. App. 2013) — 10

*Ehrhardt v. State*, 334 S.W.3d 849 (Tex. App.—Texarkana 2011, pet. ref'd) — 7

*Geick v. State*, 349 S.W.3d 542 (Tex. Crim. App. 2011) — 6

*Griffin v. State*, 614 S.W.2d 155 (Tex. Crim. App. 1981) — 9

*King v. State*, 174 S.W.3d 796 (Tex. App.—Corpus Christi 2005, pet. ref'd) — 9

*Merryman v. State*, 391 S.W.3d 261 (Tex. App.—San Antonio 2012, no pet.) — 6

*Rowland v. State*, 744 S.W.2d 610 (Tex. Crim. App. 1988) — 10

*Smith, Ex Parte,* 645 S.W.2d 310 (Tex. Crim. App. 1983) — 10

## CODES AND RULES

TEX. PEN. CODE § 12.21 — 1

TEX. PEN. CODE § 31.01(1) — 1, 5, 6-7

TEX. PEN. CODE § 31.01(3)(A) — 1, 5, 6

TEX. PEN. CODE § 31.03(a) — 1, 5, 9

| | |
|---|---:|
| TEX. PEN. CODE § 31.03(b)(1) | 1, 5 |
| TEX. PEN. CODE § 31.03(e)(2) | 1 |
| TEX. PEN. CODE § 31.03(f)(1) | 1 |
| TEX. R. APP. P. 66.3 | 5 |

**TO THE HONORABLE COURT OF CRIMINAL APPEALS:**

**COMES NOW** Appellant, James Fernandez, and submits this petition for discretionary review from an opinion and judgment from the Fourth Court of Appeals that affirmed a judgment of conviction in the 83rd Judicial District Court of Val Verde County, Stephen B. Ables, presiding.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument will helpful because this case involves issues of statutory construction and the opinion of the Court of Appeals conflicts with opinions of other courts and this Court.

## STATEMENT OF THE CASE

At the conclusion of a jury trial, Appellant was convicted of the offense of theft by deception. CR 6-7, 156, 166; RR5: 72; *see* TEX. PEN. CODE §§ 31.01(1), (3)(A); 31.03(a), (b)(1), (f)(1). The trial court sentenced Appellant to 90 days' confinement in the county jail, suspended the sentence, placed him on community supervision for 90 days, and ordered payment of restitution. CR 166; RR5: 112. *See* TEX. PEN. CODE §§ 12.21, 31.03(e)(2), (f)(1). On appeal, the Fourth Court of Appeals affirmed the conviction. This petition followed.

## STATEMENT OF PROCEDURAL HISTORY

This petition arises from Cause 04-14-00039-CR from the Fourth Court of Appeals in San Antonio, Texas. The Court of Appeals issued its opinion on De-

cember 31, 2014, and affirmed the conviction. Appellant filed no motion for re-hearing. On February 4, 2015, Appellant filed a motion for extension of time to file a petition for discretionary review, which this Court granted. This petition is due March 2, 2015, and is timely filed.

## QUESTIONS PRESENTED FOR REVIEW

### QUESTION I

**In affirming a conviction for theft by deception, did the Court of Appeals err in finding evidence of deception when the record shows only lack of actual consent? In other words, and consistent with the language of the statute, may deception only be proven when the record shows actual consent that was induced by deception but not when the record shows lack of actual consent?**

### QUESTION II

**Did the Court of Appeals err when it translated the *mens rea* of "intent to deprive" to mean instead "intent to appropriate" or "intent to commit theft?"**

## STATEMENT OF FACTS

The Statement of Facts contained in the opinion of the Court of Appeals omitted some important details. Thus, Appellant presents a more complete recitation here.

Appellant was Justice of the Peace for Precinct 4 in Val Verde County. RR4: 25, 65. Appellant and another Val Verde justice of the peace, Joey Gonzalez, planned to attend a conference in Orlando, Florida from June 20 to June 24, 2012. RR4: 26; SX 1, 2. On February 6, 2012, Veronica Mojica, Appellant's chief deputy

clerk, bought tickets on Southwest Airlines for Appellant to travel to the conference. RR4: 24-27, 159; SX 2. She used a county credit card issued to Appellant to pay the $381.60 cost. RR4: 29-30, 49; SX 2.

In June, Appellant and Judge Gonzalez both fell ill. RR4: 30-31, 42-43, 161. Appellant instructed Mojica to cancel the trip. RR4: 30-31. She cancelled the flight on June 11 and the conference registration on June 12. RR4: 31, 46, 159. The conference registration fee was refunded. RR4: 31. The Southwest Airlines ticket and the funds used to purchase it were nonrefundable and nontransferable, purchased in accordance with County procedure to purchase such lower-cost tickets to save County money. RR4: 42-43, 61, 62, 107, 159, 309; SX 2. Southwest Airlines did not refund the ticket but issued a credit to Appellant for use in a future purchase, which could not be redeemed by anyone except Appellant. RR4: 42-43, 160, 311-19; SX 2. That credit was set to expire on February 4, 2013, if left unused by Appellant. RR4: 62, 160; SX 2. Mojica informed the County Auditor's office of the cancellation and credit. RR4: 161.

About two months later, in August 2012, Appellant asked Mojica for the reservation number for the Southwest Airlines flight. RR4: 32. He requested that she call his son to give him the number, which she did. RR4: 33. On August 8, Appellant booked a ticket to Phoenix on Southwest Airlines using the previous reservation number. RR4: 91; SX 2. He also traveled on that ticket on the same day. RR4: 47, 91; SX 2. The new itinerary cost $129.00 more than the Orlando

ticket, and Appellant paid the difference from his own credit card. RR4: 47-48; SX 2. No county business was scheduled in Phoenix for August 2012, and Appellant did not claim he was conducting any County business in Phoenix through a new purchase order to the County. RR4: 47-48, 51. He did not request or receive approval from any other County official to use the voucher. RR4: 148.

Frank Lowe, the county auditor, knew in June 2012 that (1) Appellant and Judge Gonzalez bought airplane tickets to go to Orlando, (2) both cancelled the trip when Judge Gonzalez had gotten ill, and (3) the tickets were nontransferable and nonrefundable. RR4: 42-43, 87, 95-96, 161, 309; SX 2. Two months later, in August, Lowe was reviewing each county office's past fiscal-year expenses in preparation for the County budget process. RR4: 35, 41. He noticed that travel expenses were reaching the budget limit, and so he reviewed expenditures more closely. RR4: 42. He directed a member of his staff to contact Southwest Airlines to ask that, because Val Verde County is a local government entity, they make an exception to the nonrefundable-ticket policy. RR4: 44, 92, 95, 96. He then found out that the credit had been used. RR4: 96.

Lowe did not inform Appellant about his concerns in June or in August and did not ask Appellant about his findings from Southwest after August 12. RR4: 83, 98, 162. Rather, he spoke to the Val Verde County Attorney, RR4: 51-52, 91, 98, 151, 184, 202, 280, 321, 322-23. He requested that she contact the Office of the Attorney General to investigate, which she did immediately. RR4: 52, 54, 103-04.

On August 27, he informed the Val Verde County Commissioners Court of his investigation. RR4: 54, 99, 176, 324-26. Appellant's lawyer wrote a letter to Lowe, offering reimbursement, which Appellant delivered with a money order around August 27. RR4: 64-65, 74, 276-77; DX1. Lowe had informed his employees on August 20 to refuse any attempt to reimburse the County for the credit, which they followed. RR4: 51-52, 75-76, 89. Appellant also attempted make reimbursement through the County Attorney. RR4: 75, 280-88, 329; DX4.

## REASONS FOR GRANTING REVIEW

In affirming the conviction in this case, the Court of Appeals has misconstrued Penal Code sections 31.01(1), 31.01(3)(A), 31.03(a), and 31.03(b). In doing so, the opinion of Court of Appeals conflicts with opinions of this Court and with other Courts of Appeals. The opinion of the Court of Appeals has therefore so departed from the accepted and usual course of judicial proceedings so as to call for an exercise of this Court's power of supervision. *See* TEX. R. APP. P. 66.3.

## ARGUMENT

### QUESTION I

**In affirming a conviction for theft by deception, did the Court of Appeals err in finding evidence of deception when the record shows only lack of actual consent? In other words, and consistent with the language of the statute, may deception only be proven when the record shows actual consent that was induced by deception but not when the record shows lack of actual consent?**

The Court of Appeals improperly found deception by Appellant because he bought the original Southwest ticket to attend a conference and cancelled the ticket due to illness. Slip op. at 9. At that time, the Court of Appeals believes, Appellant "created an [false] impression of fact that the tickets would be used to go to Orlando on approved county business." Slip op. at 9. According to the Court of Appeals, Appellant failed to correct this false impression when he used the credit for a personal trip in August. Slip op. at 9. The Court of Appeals misinterpreted the statute and misapplied the caselaw to find deception in this otherwise silent record.

Here, the indictment alleged theft by deception.[1] CR 6. "The distinguishing feature between lawful acquisitive conduct from theft is the intent to acquire without effective consent at the time of the deprivation." *Merryman v. State*, 391 S.W.3d 261, 271 (Tex. App.—San Antonio 2012, no pet.). When "a defendant is charged with theft by deception, consent must be induced by deception." *Bozeman v. State*, 2012 Tex. App. LEXIS 223, at *15 (Tex. App.—Texarkana Jan. 12, 2012, no pet.); *see* TEX. PENAL CODE § 31.01(3)(A). By statute, deception consists of actively misleading, passively misleading, by failing to correct, or misleading by preventing another from understanding the transaction. *See* TEX. PENAL CODE §

---

[1] Because the State alleged deception in the indictment, deception is an essential element of the offense. *See Geick v. State*, 349 S.W.3d 542, 548 (Tex. Crim. App. 2011).

31.01(1).[2] To "induce" means "to bring about, produce, or cause." *Ehrhardt v. State*, 334 S.W.3d 849, 853 (Tex. App.—Texarkana 2011, pet. ref'd).

Notably, the Court of Appeals never used the word "induce" in its opinion. The error in the analysis of the Court of Appeals comes from this simple skip in the statutory analysis: at what point did Appellant use deception to induce the County to consent to the use of the Southwest credit?

The Court of Appeals believes that Appellant induced consent by informing the County in February that the ticket would be used for County business. Yet, the record supports that fact and contains no evidence of deception in February. On February 6, 2012, Appellant's chief deputy clerk, bought the plane tickets on Southwest Airlines for Appellant to travel to the conference. RR4: 24-27, 159; SX 2. She used a county credit card issued to Appellant to pay the fare. RR4: 29-30, 49; SX 2. Appellant was registered for the conference, and the registration fee was paid with County funds. RR4: 31, 46, 159.

Perhaps the Court of Appeals believes that the deception occurred in June: "Fernandez later caused those tickets to be cancelled." The record shows otherwise. In June, Appellant and the other Justice of the Peace planning to attend the conference fell ill. RR4: 30-31, 42-43, 161. Appellant instructed Mojica to

---

[2] The code provides two additional definitions that do not apply here, because they involve the transfer of encumbered property or deception in the promise of performance. *See* TEX. PEN. CODE § 31.01(1)(D), (E).

cancel the trip. RR4: 30-31. She cancelled the flight on June 11 and the conference registration on June 12.

Southwest Airlines issued the credit to Appellant when Mojica, his clerk, cancelled the reservation for the Florida conference. RR4: 42-43, 160, 311-19; SX 2. Mojica then informed the County Auditor's office of the cancellation and the credit. RR4: 161. The County Auditor, Lowe, personally knew in June in his official capacity as county auditor that Appellant and Judge Gonzalez had bought tickets to go to Orlando, that both had cancelled the trip when Judge Gonzalez had gotten ill, and that the tickets were nontransferable and nonrefundable. RR4: 42-44, 87, 92, 95-96, 161, 309; SX 2. In addition, the County was not collecting, attempting to collect, or to control in any manner, other similarly issued Southwest credits. *See* RR4: 62-63, 70, 72, 89, 97 (Judge Joey Gonzalez); RR4: 62, 72, 89 (sitting County Judge and her assistant); *see also* RR4: 251 (comment of trial court about continuing lack of County policy). The County was not deceived in June.

Appellant did not seek and did not receive actual permission from the County to use the credit. However the appropriation happened, though, no one was deceived. The Court of Appeals believes that a crime occurred because Appellant failed to gain consent of the County to use the credit when he had earlier created "the false impression . . . that the tickets would be used for county business." Slip op. at 9. This conclusion misapplies statutory language of theft-by-deception: deception only occurs when consent has been induced. *See Bozeman*, 2012 Tex.

8

App. LEXIS 223, at *15. Alternatively, when there is no consent there can be no deception. A theft conviction may still be found, but not on an indictment charging theft by deception.

Although Appellant did not attempt to gain the County's consent to use the Southwest credit, he did not deceive the County either. The Court should reverse Court of Appeals, reverse the judgment of conviction, and order an acquittal.

## QUESTION II

**Did the Court of Appeals err when it translated the *mens rea* of "intent to deprive" to mean instead "intent to appropriate" or "intent to commit theft?"**

The Court of Appeals made its mistake when considering the culpable mental state of the theft statute. *See* TEX. PEN. CODE § 31.03(a). The Court of Appeals defined the problem as "whether the accused had the requisite intent to commit theft." Slip op. at 7. This frame is legally incorrect and misinterprets the statute.

An appropriation of property constitutes theft only if the person acted "with intent to deprive" the owner of the property. TEX. PEN. CODE § 31.03(a). The intent to deprive is determined from the accused's words and acts. *King v. State*, 174 S.W. 3d 796, 810 (Tex. App.—Corpus Christi 2005, pet. ref'd) (citing *Griffin v. State*, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981)). The fact-finder may infer intent from any facts that tend to prove its existence, including the method of committing the crime. *Id*. at 811.

Intent, the *mens rea* of theft, concerns whether the accused intended to deprive the owner of the property. *Celis v. State*, 416 S.W.3d 419, 424 (Tex. Crim. App. 2013); *Ex parte Smith* 645 S.W.2d 310, 311-12 (Tex. Crim. App. 1983). The accused's intent with the taking or the appropriation is immaterial to the analysis. *See id*. In other words, appropriation of property does not alone prove intent to deprive the owner of the property. *See Rowland v. State*, 744 S.W.2d 610, 613 (Tex. Crim. App. 1988).

Finally, criminal liability "depends upon a person's culpable mental state at the time the person performs some criminal act." *Daugherty v. State*, 387 S.W.3d 654, 658-659 (Tex. Crim. App. 2013). "What is relevant is the defendant's intent at the time of the taking." *Cruz v. State*, No. 08-03-00313-CR 2007, Tex. App. LEXIS 9002, at *35 (Tex. App.—El Paso Nov. 15, 2007, pet. ref'd) (citing *Rowland*, 744 S.W.2d at 612); *see also Griffin*, 614 S.W.2d at 159.

The Court of Appeals, on the other hand, analyzed this case as if intent concerns the accused's decision to appropriate, or take, the property. *See* Slip op. at 7. The Court focused only on the facts that "the County was permanently deprived of the ability to have Fernandez use the credit for county business," that Appellant "experienced a personal gain from the use of the credit," that he "did not seek permission to use the credit or notify the County of his use of the credit," and that he offered to reimburse the County only when he "learned of the investigation." *See* Slip op. at 7-8. These facts are relevant to issues of appropriation: that

10

Appellant used the credit, that the County could not, that Appellant did not tell the County (or get its "effective consent") or reimburse the County.

But what of Appellant's intent when he used the credit? This record contains evidence only (1) that Appellant used a credit that only he could use; (2) that the County knew about the credit and its limitations; and (3) that the County did not communicate any policy or restrictions about the credit to Appellant. The record says nothing about an intent to deprive, only that Appellant used a credit he thought was only his to use.

The Court of Appeals improperly applied the intent culpable mental state to the appropriation. A correct analysis of the theft conviction, focused on evidence of an intent to deprive, reveals no evidence on this vital element. Therefore, this Court should reverse the judgment of the Court of Appeals, reverse the judgment of conviction, and order an acquittal.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellant prays that the Court grant this Petition for Discretionary Review and grant oral argument. Appellant further prays that, after submission, the Court reverse the judgment and opinion of the Court of Appeals, and render a judgment of acquittal.

Appellant prays for any such further relief to which he may be entitled.

Respectfully submitted,

/s/ James Gerard McDermott, II

James Gerard McDermott, II
**Thompson Salinas Rickers & McDermott, LLP**
8140 N. Mopac
Westpark 4, Suite 250
Austin TX 78759
512.201.4099
512.298.1129 (facsimile)
james@centraltexaslawyers.com
*Attorney for Appellant*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with Texas Rule of Appellate Procedure 9.4. The computer-generated word count for this document is 2485 words, including headers and footnotes.

/s/ James Gerard McDermott, II
James Gerard McDermott

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document was served by electronic service on March 2, 2015 to:

Lance Kutnick
Assistant Attorney General
District Attorney Pro Tem
Office of the Attorney General
PO Box 12548
Austin TX 78711

Lisa C. McMinn
State Prosecuting Attorney
209 W. 14th Street
Austin, Texas 78701
information@spa.texas.gov

/s/ James Gerard McDermott, II
James Gerard McDermott



# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00039-CR

James **FERNANDEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 83rd Judicial District Court, Val Verde County, Texas
Trial Court No. 12716-CR
Honorable Stephen B. Ables, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:       Catherine Stone, Chief Justice
               Karen Angelini, Justice
               Rebeca C. Martinez, Justice

Delivered and Filed:  December 31, 2014

AFFIRMED

A jury convicted James Fernandez of the offense of theft by a public servant in the amount of $50 or more but less than $500. On appeal, Fernandez argues the evidence was insufficient to support his conviction. We affirm.

### BACKGROUND

Fernandez was the Justice of the Peace for Precinct 4 in Val Verde County, Texas. Fernandez planned to attend a conference for elected officials in Orlando, Florida from June 20 to June 24, 2012. Fernandez's attendance at the conference was approved county business.

In February 2012, Fernandez asked the chief deputy clerk of the court, Veronica Mojica, to make travel arrangements for him to attend the conference. Mojica bought tickets on Southwest Airlines for Fernandez to travel to and from the conference. To pay for the tickets, which cost $381.60, Mojica used a county credit card issued to Fernandez. County policy prefers the purchase of nonrefundable/nontransferable airline tickets because they generally cost less than refundable tickets. Therefore, the tickets purchased by Mojica were nonrefundable/nontransferable. Documentation was submitted to the county auditor in support of this purchase.

Months later, Fernandez decided he would not attend the conference due in part to illness. He instructed Mojica to cancel his flight reservations. Mojica cancelled the reservations on June 11, 2012. In accordance with its policy, Southwest Airlines did not refund the tickets, but did issue a credit for use in a future purchase. The credit could not be redeemed by anyone except Fernandez. If not used, the credit would expire on February 5, 2013. However, if the county paid a nominal fee, the credit could have been extended for an additional year.

On August 8, 2012, Fernandez called Mojica to ask her for the reservation number for the cancelled San Antonio-Orlando airline tickets. Mojica located the reservation number and, at Fernandez's direction, provided it to Fernandez's adult son. Fernandez's son booked flights for his father from San Antonio to Phoenix and back using the $381.60 credit from the cancelled San Antonio-Orlando flights. The new tickets cost more than the San Antonio-Orlando flights, and the additional amount was paid with Fernandez's personal credit card. On August 8, 2012, Fernandez traveled on the flight from San Antonio to Phoenix. The trip was for personal reasons, not for county business. Fernandez did not seek approval from any county official to use the credit.

Shortly thereafter, the county auditor, Frank Lowe, noticed that the County's travel expenses were approaching its budget limit. Lowe was aware that Fernandez had cancelled his airline tickets for the Orlando trip. Lowe directed a member of his staff to contact Southwest

Airlines and ask if it would make an exception and refund the cancelled tickets. The staff member contacted Southwest Airlines and learned that the credit from Fernandez's cancellation had been used. Lowe then obtained from Southwest Airlines documentation showing Fernandez's reservation history and the use of the credit for flights from San Antonio to Phoenix and back. The county auditor's office had received supporting documentation for Fernandez's San Antonio-Orlando trip but had not received such documentation for Fernandez's San Antonio-Phoenix trip.

On August 20, 2012, Lowe informed the county attorney of his findings. The county attorney contacted the attorney general's office, which began an investigation. After the investigation was underway, Fernandez tendered a money order to the County to reimburse the County for his use of the credit. The County, however, did not accept the reimbursement.

Fernandez was indicted on three counts: theft by a public servant, abuse of official capacity, and misapplication of fiduciary property. Fernandez pleaded not guilty to all counts. At trial, the State's theory was that Fernandez committed an offense when he used the credit from the cancelled San Antonio-Orlando tickets to purchase the San Antonio-Phoenix tickets. The parties entered into a written stipulation of evidence that provided, among other things, that the original tickets were nonrefundable and nontransferable, that the original tickets were issued in Fernandez's name and any credit remaining on the tickets could not in any way be refunded to the County or used by the County, and that the credit had an expiration date of February 5, 2013. The written stipulation was admitted into evidence. Various witnesses also testified at trial, including Mojica, Lowe, and Fernandez's son.

The jury found Fernandez guilty of theft by a public servant, a Class B misdemeanor. The trial court sentenced Fernandez to ninety days confinement in the county jail. The sentence was suspended and Fernandez was placed on community supervision for ninety days. Fernandez was also ordered to pay restitution in the amount of $381.60. Fernandez appealed.

## STANDARD OF REVIEW

In reviewing the sufficiency of the evidence to support a conviction, we review all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Geick v. State*, 349 S.W.3d 542, 545 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We also defer to the trier of fact's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

## DISCUSSION

Fernandez challenges the sufficiency of the evidence to support three elements of the offense of theft by a public servant: (1) that the County was the owner of the credit; (2) that Fernandez intended to deprive the county of property; and (3) that Fernandez acted with deception when he used the credit.

As a threshold matter, Fernandez contends that it was unclear from the indictment what property was unlawfully appropriated.[1] For this reason, Fernandez explains that the first four issues

---

[1]The relevant portion of the indictment states:

> On or about the 8th day of August, 2012, and before the presentment of this indictment, James Fernandez, in Val [V]erde County, Texas, did then and there unlawfully appropriate, by acquiring or otherwise exercising control over property, to-wit: a plane ticket, of the value of $50 or more but less than $500, from Frank Lowe, on behalf of Val Verde County, Texas, the owner thereof, without the effective consent of the owner, namely by deception, and with the intent to deprive the owner of

presented in his brief assume that the unlawfully appropriated property was the credit issued by Southwest Airlines for the cancelled Orlando trip, and the last three issues assume that the appropriated property was the tickets issued for travel to and from Orlando. The State counters that Fernandez's briefing "needlessly confuses the property at issue" in this case. According to the State, its theory was that "[o]n or about August 8, 2012, Fernandez unlawfully appropriated the credit for a ticket [] in his name (that can only be used for county business) into a plane ticket to go to Arizona for personal reasons." The State further argues that the evidence was sufficient to support the jury's verdict.

### *Owner of the Credit/Unlawful Appropriation*

In his first and second issues, Fernandez argues the County had abandoned its interest in the Southwest-issued credit and therefore the evidence was insufficient to show that the County was the owner of the credit and that he unlawfully appropriated the credit. The Texas Penal Code provides that a person commits the offense of theft if he unlawfully appropriates property with intent to deprive the owner of the property. TEX. PENAL CODE ANN. § 31.03(a) (West 2014). Appropriation of property is unlawful if it is without the owner's effective consent. *Id*. § 31.03(b). "Appropriate" is defined as "to acquire or otherwise exercise control over property other than real property." *Id*. 31.01(4)(B).

The Texas Penal Code defines "owner" as a person who "has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor." TEX. PEN. CODE ANN. § 1.07(a)(35)(A) (West Supp. 2014). It further defines "possession" as "actual care, custody, control, or management." TEX. PENAL CODE ANN.

---

the property, and the defendant was then and there a public servant, namely, a Justice of the Peace of Val Verde County, Texas, and such property appropriated by the defendant had therefore come into his custody, possession or control by virtue of his status as a public servant[.]

§ 1.07(a)(39). In defining the word "owner" as it did, the Legislature clearly gave the word an expansive meaning. *Freeman v. State*, 707 S.W.2d 597, 603 (Tex. Crim. App. 1986). "The issue of 'ownership' goes to the scope of the property interest protected by the law and is intended to protect all ownership interests in property from criminal behavior." *Id*.

An individual may abandon his personal property. *Ingram v. State*, 261 S.W.3d 749, 753 (Tex. App.—Tyler 2008, no pet.) (citing *Worsham v. State*, 120 S.W. 439, 443 (1909)). "Abandon" means "a giving up," "a total desertion," or "an absolute relinquishment." *Id*. "Abandonment includes both the intention to forsake and the act by which such intention is carried into effect." *Id*. Thus, it is possible to take possession of abandoned property without committing a theft or intending to commit a theft. *Id*.

Fernandez asserts that the County was not the owner of the credit because it had abandoned its interest in the credit. In support of his argument, Fernandez emphasizes that the credit was in his name and could not be used by anyone else; County policy favored the purchase of nontransferable/nonrefundable tickets; when nontransferable/nonrefundable tickets went unused, the funds used to purchase those tickets were lost by the County; and the County had no specific policy asserting its ownership over credits for unused tickets. The State argues these facts are not determinative, pointing out that the credit had a value of $381.60 until February 5, 2013, and that at the time Fernandez used the credit, there were about six months remaining before the credit expired. The State also points out that Fernandez could have used the credit for county-approved business travel prior to February 5, 2013.

Viewed in the light most favorable to the verdict, the evidence showed that the source of the credit was the purchase of airline tickets with county funds for the purpose of county business. The County's personnel manual provided: "Personal use of county vehicles, equipment, supplies, tools, and any other [c]ounty property shall not be permitted." Thus, the personnel manual

prohibited the personal use of county property. The law provides that anyone who had a greater right to possess, control, or manage the credit than Fernandez could be the "owner" of the credit. *See* TEX. PEN. CODE ANN. § 1.07(a)(35)(A), (39). We conclude a rational trier of fact could have found that the County had not abandoned its interest in the credit, and that the County had a greater right to possess, control, or manage the credit than Fernandez. We further conclude a rational trier of fact could have found that the County was the owner of the credit and that Fernandez unlawfully appropriated the credit.

### *Intent to Deprive*

In his third issue, Fernandez argues the evidence was insufficient because the State failed to produce any evidence that he intended to deprive the County of its property when he used the credit. "A person commits theft if he unlawfully appropriates property with the intent to deprive the owner of the property." *Byrd v. State*, 336 S.W.3d 242, 250 (Tex. Crim. App. 2011); *see* TEX. PENAL CODE ANN. § 31.03(a). "Deprive" means "to withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner" or "to dispose of property in a manner that makes recovery of the property by the owner unlikely." TEX. PENAL CODE ANN. § 31.01(2)(A,)(C) (West 2014). Intent to deprive is determined from the words and acts of the accused. *King v. State*, 174 S.W.3d 796, 810 (Tex. App.—Corpus Christi 2005, pet. ref'd) (citing *Griffin v. State*, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981)). In determining whether the accused had the requisite intent to commit theft, the fact finder may consider whether the accused experienced personal gain from the property obtained. *Christensen v. State*, 240 S.W.3d 25, 32 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd).

Viewed in the light most favorable to the verdict, the evidence showed that Fernandez used the credit to purchase tickets to take a trip for personal reasons. When Fernandez used the credit to purchase the San Antonio-Phoenix tickets, the County was permanently deprived of the ability

to have Fernandez use the credit for county business. Fernandez experienced a personal gain from the use of the credit because he did not have to pay for a portion of the tickets with his own funds. The evidence also showed that Fernandez did not seek permission to use the credit or notify the County of his use of the credit. Nor did Fernandez reimburse the County for his use of the credit upon his return. It was not until Fernandez learned of the investigation into the matter that he attempted to reimburse the County. We conclude a rational trier of fact could have found that Fernandez intended to deprive the County of its property when he used the credit.

### *Deception*

In his fourth issue, Fernandez argues that the evidence was insufficient because the State failed to produce any evidence that, when he used the credit, he acted with deception, as alleged in the indictment and defined by section 31.01(1). If an indictment uses a statutory definition to specify how a theft was committed, the State must prove the offense as charged in the indictment. *Geick*, 349 S.W.3d at 543; *Leal v. State*, 975 S.W.2d 636, 640 (Tex. App.—San Antonio 1998, pet. ref'd). Here, the indictment alleged that Fernandez unlawfully appropriated the property "without the effective consent of the owner, namely by deception, and with the intent to deprive the owner of the property . . ." Thus, the State was required to prove deception. *See Geick*, 349 S.W.3d at 548 (holding that when the State unnecessarily pled that the theft was by deception but provided no proof of deception, the evidence was insufficient to support a conviction); *Leal*, 975 S.W.3d at 640 (holding that when the indictment alleged theft was committed by acquiring property without the effective consent of the owner "by deception," the State was required to prove this allegation).

The Texas Penal Code contains multiple definitions of the word "deception." TEX. PENAL CODE ANN. § 31.01(1) (West 2014). The definition of "deception" applicable to this case is "failing to correct a false impression of law or fact that is likely to affect the judgment of another in the

transaction, that the actor previously created or confirmed by words or conduct, and that the actor does not now believe to be true." TEX. PENAL CODE ANN. § 31.01(1)(B).

Viewed in the light most favorable to the verdict, the evidence showed that Fernandez purchased nontransferable/nonrefundable airline tickets for travel to Orlando on county business. Documentation was submitted to the county auditor's office in support of this purchase. Thus, Fernandez created an impression of fact that the tickets would be used to go to Orlando on approved county business. Fernandez later caused those tickets to be cancelled, resulting in a credit. Fernandez subsequently used that credit to obtain tickets for a trip to Phoenix. Fernandez did not believe that the San Antonio-Phoenix tickets would be used for county business; rather, Fernandez knew that these tickets were for personal use. Fernandez did not inform the county auditor's office that he used the credit to obtain these tickets for his personal use, nor did he reimburse the County for the credit when he returned. In fact, Fernandez did not attempt to reimburse the County for the credit until after he learned of the investigation into the matter. Thus, Fernandez failed to correct the false impression that he previously created that the tickets would be used for county business. We conclude a rational trier of fact could have found that he acted with deception, as alleged in the indictment and defined by section 31.01(1)(B) of the Texas Penal Code.

## CONCLUSION

We have determined that the evidence was sufficient to support Fernandez's conviction based on the theory that the appropriated property was the credit issued by the airline for the San Antonio-Orlando tickets. We, therefore, we need not address Fernandez's remaining issues which are based on an alternative theory. The judgment of the trial court is AFFIRMED.

Karen Angelini, Justice

Do not publish