WADDILL WORSHAM V. THE STATE.

No. 4160.   Decided May 19, 1909.

**1.—Theft—Indictment—Check—Negotiable Instrument—Delivery.**

Delivery of a negotiable instrument is not essential to its validity in the hands of an innocent holder for value, and this is true though the maker lost possession by theft; and an indictment charging theft of a check need not allege delivery; and such check may be the subject of theft.

**2.—Same—Charge of Court—Weight of Evidence—Defensive Issue.**

Where upon trial for theft of a $75 check there was evidence by defense that the maker of said check made two checks for $75, one of which he delivered to the defendant, and the State claimed that the maker had made but one $75 check which he had taken up by incorporating it in a larger check, and had wadded up said $75 check and thrown it away, and that defendant stole it, there was no error in the court's charge in submitting this contention of the respective parties, with a view of making clear to the jury the nature of defendant's defense, and the same was not on the weight of the evidence.

**3.—Same—Charge of Court—Circumstantial Evidence.**

Where upon trial for theft, defendant admitted the possession of the alleged stolen property, but claimed that his possession thereof was obtained in such manner as not to constitute theft, there was no error in the court's failure to charge on circumstantial evidence.

**4.—Same—Charge of Court—Accomplice.**

Where upon trial for theft of a check the witness' connection with the matter was his mere presence during the time the check was stolen, and the fact that he cashed it later, this did not constitute him an accomplice, and no charge on accomplice testimony was necessary.

**5.—Same—Charge of Court—Abandonment of Property.**

Where upon trial for theft of a check the evidence showed that the maker thereof threw it away in the belief that it was so mutilated as not to be subject of use, and the check was afterwards restored and used, the issue of abandonment of property was not in the case, and no charge on this issue was required.

**6.—Same—Variance.**

Where upon trial for theft of a check there was on inspection of the original check no variance between it and the one alleged in the indictment, the question of variance was not raised.

Appeal from the District Court of Collin.   Tried below before the Hon. J. M. Pearson.

Appeal from a conviction of theft; penalty, two years confinement in the penitentiary

The opinion states the case.

*Smith & Wilcox,* for appellant.—On question of court's charge as being on the weight of the evidence:  Stuckey v. State, 7 Texas Crim. App., 174; Forbes v. State, 35 Texas Crim. Rep., 24; Carter v. State, 39 Texas Crim. Rep., 345; Dobbs v. State, 51 Texas Crim. Rep., 113; 100 S. W. Rep., 946.

*F. J. McCord,* Assistant Attorney-General, and *Geo. P. Brown,* County Attorney, for the State.—Cited cases in the opinion.

RAMSEY, Judge.—Appellant was convicted in the District Court of Collin County on the 19th day of February of this year on a charge of theft of a check of the alleged value of $75, the property of one Newt Logan, and his punishment assessed at two years confinement in the penitentiary.

The testimony of the State was to the effect, in substance, that in December of last year Waddill Worsham and Newt Logan were engaged in a game of cards in Worsham's room, in the town of McKinney; that during the progress of the game Logan had lost to Waddill in the game $50; that they went down stairs, secured a blank check, and returned to the room, when the suggestion was made that if appellant would take a check for that amount he would make it for the sum of $75, and appellant could pay him $25 in money, and they would continue the game, which was done; that sometime after this, one F. D. Perkins entered the room and engaged in the game; that the playing proceeded for some time, until Perkins had won from appellant the $75 check; that, desiring to still further try his luck, Logan suggested to Perkins if he would lend him $50 that he would take up the $75 check which Perkins then had, and give him a check for $125. This was agreed to, and Logan and Perkins testify that the $75 check was returned to Logan, and a check given by Logan to Perkins in the sum of $125. Logan testifies that he thereupon wadded up the $75 check and threw it on the floor, and proceeded with the game until he lost the $50 which Perkins had given him, and the game continued for some time between appellant and Perkins, with the result finally that appellant won from Perkins the $125 check. It was appellant's contention, and he so testified, that it was true that he had first engaged in the game with Logan, and within something like an hour had won from him what money he had and a small amount borrowed from one Harris, and the sum of $75 additional, and that thereupon they went down stairs and obtained a blank check in the store of Nelson & Wilkinson, and that at this place, and on their showcase, appellant wrote, signed and delivered to him the identical check for the theft of which he is charged herein. That later on they returned to the room, where, to cover his losses, Logan executed another $75 check, as well as one for $125. That the next day the check for $125 and the check for $75, for the theft of which appellant stands charged, was cashed for him by one Harris. This is perhaps a sufficient statement of the case to make clear the questions arising on the appeal.

Appellant filed a very able and very ingenious brief, and on submission supplemented same by a forceful oral argument, asserting and presenting many reasons why the judgment of conviction should be reversed. We have been led, however, by a careful consideration of the entire record, to believe that no error was committed on the trial for which the case should be reversed.

1. The first error assigned is, in substance, that the indictment is defective in the following particulars: That it is insufficient to charge

the offense of theft of a check, in that said indictment fails to allege that said check had been delivered to anyone by the maker thereof, but, on the contrary, said indictment shows upon its face that the check was payable to bearer, and at the time of its alleged theft was still in the possession of the drawer; that the indictment showed that the said check was not such property as may be the subject of theft, in that it imports no liability until the maker of said check delivers the same to some person, and that said check, until same had been delivered by the drawer to some other person, would not support a civil action, and because said indictment shows on its face that said check, at the time it was taken, if it was taken, had no value whatever. Under this assignment of error appellant submits these propositions: (a) A negotiable instrument, payable to bearer, in the possession of the drawer, has no value whatever: (b) delivery by the maker is essential to complete a negotiable instrument payable to bearer, and without such delivery said instrument is void, even in the hands of innocent holders for value without notice; (c) the indictment charges no offense against the laws of Texas, in that it charges the taking of a negotiable instrument payable to bearer from the possession of the maker. These assignments ignore and take no account, as we conceive, of the provisions of our Penal Code. Article 866 of the Penal Code is as follows: "The term 'property,' as used in relation to the crime of theft, includes money, bank bills, goods of every description commonly sold as merchandise, every kind of agricultural produce, clothing, any writing containing evidence of an existing debt, contract, liability, promise or ownership of property real or personal, any receipts for money, discharge, release, acquittance and printed book or manuscript, and, in general, any and every article commonly known as and called personal property, and all writings of every description, provided such property possessed any ascertainable value." It will be observed that, by the terms of this provision, theft of any writing containing evidence of existing debt, contract, liability, promise or ownership of property, real or personal, and, in a general way, every article commonly known as and called personal property, and of writings of every description, is made theft, provided such property possesses ascertainable value. This precise question was ruled adverse to appellant in the case of Calentine v. State, 50 Texas Crim. Rep., 154. While the judgment in that case was reversed, it was on account of the insufficiency of the description of the property alleged to have been stolen, which was merely described as "one promissory note of the value of $31.80." In the course of his opinion, however, Judge Henderson uses this language: "At common law a promissory note was not the subject of theft, it not being considered property, but merely the evidence or representation of property. However, under our statute, we take it that the note would be regarded as property and is the subject of theft." Again, we think the proposition submitted by the State, that delivery of a negotiable instrument is not essential to its validity in the hands of an innocent holder for value, and

this is true though the maker lost possession by theft, is established by the authorities. In the case of Mulberger v. Morgan, 34 S. W. Rep., 148, the court approves the following language of Daniel, Neg. Inst., sec. 836: "We have seen that the delivery is necessary in the case of a bill or note, as it is in the case of every other contract, in order to consummate its validity between the parties to it. Suppose, however, that a bill or promissory note has been fully completed in form, and signed by the drawer or maker, and, before delivery, is stolen from the possession of the party who has signed it, and passed by the thief to a bona fide holder for value, in the usual course of business—would the fact that the party signing had never delivered it afford him a defense against such bona fide holder? Whether the instrument be payable to bearer or to the order of the thief, if it be indorsed by him, we can see no reason why the bona fide holder should not be entitled to recover. The want of delivery is not a defect of the bill or note. The party has given the appearance of validity to his paper. His signature is itself an assurance that his obligation has been perfected by delivery; and, it being necessary that the loss should fall upon one of two innocent parties, it should fall upon the one whose act had opened the door for it to enter." And adds: "The courts of this State have gone far to uphold the rights of a bona fide holder of negotiable paper, as will be seen from the following cases: Stark v. Alford, 49 Texas, 260; Gee v. Saunders, 66 Texas, 333; 1 S. W. Rep., 272; Davis v. Gray, 61 Texas, 506; Greneaux v. Wheeler, 6 Texas, 515; Ross v. Smith, 19 Texas, 171; Insurance Co. v. Turnley, 61 Texas, 365; Wilson v. Denton, 82 Texas, 531; 18 S. W. Rep., 620; Whithed v. McAdams, 18 Texas, 553; Herman v. Gunter, 83 Texas, 66; 18 S. W. Rep., 428; Hardie v. Wright, 83 Texas, 345; 18 S. W. Rep., 615." This rule is sustained by the opinion of our Supreme Court in the case of Texas Bank and Insurance Company v. Turnley, 61 Texas, 365. See also Cochran v. Fox Chase Bank, 103 American State Rep., 976; Wilson v. Denton, 18 S. W. Rep., 620; Weathered v. Smith, 9 Texas, 623; Whitesides v. First National Bank of Chattanooga, 47 S. W. Rep., 1108. Randolph on Commercial Paper, volume 1, section 217, recognizes the same doctrine. This learned writer there says: "Where a note or bill is so drawn or indorsed as to be payable to bearer, and transferable by delivery, the want of delivery will constitute no defense to the paper in the hands of a bona fide holder. So where a check indorsed in blank by payee is canceled by tearing it into two pieces, and is afterwards put together and transferred to a bona fide holder, the want of proper delivery will constitute no defense." Again, he says, volume 3, section 1893: "On the other hand, the fact that a bill has been lost by, or stolen from, the rightful owner, will not defeat a bona fide purchaser under genuine indorsement." Besides, whatever may be the rule in respect to the rights of parties in regard to such check in a civil action, it was the evident intent and purpose of the law to punish a theft of bills, notes, checks and other instruments of writing the result of which might

embarrass, discommode or injure the rightful owner, and we think the provisions of our Penal Code are so general as to undoubtedly include such a case as is here presented.

2. It is insisted, and the point is not without some difficulty, that the court erred in the following portion of his charge to the jury: "The State claims in this case that the check for $75, offered in evidence, and which the undisputed evidence shows was signed by Newt Logan, was taken up and paid by Newt Logan by being incorporated as a part of the consideration for the check for $125, which the undisputed evidence also shows was signed by Newt Logan. On the other hand, the defendant claims that there were two checks for $75, each given and executed by Newt Logan, on the occasion when the defendant is charged to have committed the offense alleged in the indictment, and defendant further claims that the check for $75 offered in evidence constitutes no part of the consideration for which the check for $125 was given.

"Now, if you find and believe from the evidence that the check for $75, offered in evidence, and which defendant is alleged to have stolen, was not given as a part of the consideration for the check for $125, exhibited in evidence before you, or if you have a reasonable doubt whether or not it was a part of the consideration for the $125 check given by Logan, you will acquit the defendant, and so say by your verdict." We do not believe, however, in view of the facts of this case, and tested with reference to other portions of the charge of the court, and in the light of the instructions given at the request of counsel for appellant, that this charge can or should be held either erroneous or hurtful. After defining theft, the court had, in the paragraph immediately preceding the language above quoted, thus instructed the jury: "If in this case defendant did, in the county of Collin and the State of Texas, at any time within five years next before the 23d day of January, 1909 (which is the date of the filing of the indictment in this case), fraudulently take from the possession of Newt Logan the check for $75, as alleged in the indictment, without the consent of the said Newt Logan, and with intent to deprive the said Newt Logan of the value of the same, and to appropriate it to the use of him, the said defendant, and that said Newt Logan was at the time the owner of said check, and if you find the value of the check to be seventy-five dollars, then you will find the defendant guilty as charged, and assess his punishment at confinement in the penitentiary for any term of years not less than two nor more than ten years. If you do not so believe beyond reasonable doubt, you will acquit the defendant." In addition to this charge, the court, at the request of counsel for appellant, had given the following instructions: (No. 5.) "If you should find and believe from the evidence that the prosecuting witness, Newt Logan, during the course of a card game, made, executed and delivered to the defendant, in the defendant's room, a certain check for seventy-five dollars, and that afterwards this check was returned to said Newt

Logan, and he wadded the same up and threw it down upon the floor, and that the defendant afterwards found it, yet the defendant can not be convicted of the theft of it, unless you further believe from the evidence that at the time he found it he fraudulently took it with the intent at that time to deprive the said Newt Logan of the value of it, and to appropriate it to his own use or benefit.

"No fraudulent intent in the mind of the defendant in relation to the check in question, which was formed after he had taken the check, if he did, will authorize his conviction of the theft of the same." Special charge No. 4, requested by appellant and given by the court, is as follows: "If you should find and believe from the evidence that the prosecuting witness, Newt Logan, made, executed and delivered to the defendant a certain check for seventy-five dollars, while in the restaurant near where the card game in question was being played, and you further find and believe that the seventy-five dollar check was cashed by the witness 'Bill' Harris, at the request of the defendant, was the identical check which the defendant received from said Logan in said restaurant, and that said check had remained in the possession of the defendant until he delivered the same to the witness 'Bill' Harris, for the purpose of being cashed, then it will be your duty to acquit the defendant." It will be observed, therefore, that the court by his charge required the jury to find from the evidence, beyond a reasonable doubt, that appellant had fraudulently taken from the possession of Logan the check for $75, as alleged in the indictment, without his consent, and had instructed them if they did not so believe beyond a reasonable doubt, they should acquit appellant. In view of the fact that there were two checks for $75 spoken of in the testimony, and in view of the contention of the respective parties, the court, after a statement of their contentions and a correct statement of their respective positions, instructed the jury that if they believed from the evidence that the check for $75, offered in evidence, was not given as a part of the consideration for the check for $125, or if they had a reasonable doubt as to whether it was a part of the consideration for said $125 check, they would acquit appellant, and so find by their verdict. This, in fact, it seems to us is a more favorable charge to appellant than he was entitled to receive; nor is the charge complained of subject to the criticism that it is on the weight of the testimony. It expresses no opinion—none is implied in any statement by the court—but undoubtedly, as thought by the court at the time, a brief explanation of the contention of the respective parties was essential, in view of the state of the testimony, and the claim that here were two checks for $75 executed by Logan on the same night. The authorities cited by appellant are not in point. The case of Rice v. State, 3 Texas Crim. App., 451, was reversed for the reason that the court instructed the jury that, if they believed that deceased was killed, under the circumstances as detailed, by one Jack West, they would find him guilty. This, the court says, was tantamount to saying: "If you believe Jack West's testimony, you should find the

defendant guilty, without reference to what any of the other witnesses might have said," and it was held that clearly such a charge would be upon the weight of the evidence. The case of Maddox v. State, 12 Texas Crim. App., 429, was reversed because of an erroneous charge as to the effect of an unrecorded brand. That charge was held to be erroneous because it undertook to give the legal effect of certain testimony when the law had not prescribed that it should have such effect. Nor is the case of Jaimes v. State, 32 Texas Crim. Rep., 473, in point. There the court had instructed the jury that, if they believed that the defendant borrowed the animal in question, and was to return it in two days, and did not return it, but took it to Laredo and it was there taken from him, that this would be a fraudulent appropriation of the animal by defendant. It was properly held that, whether the facts were or were not sufficient to show a fraudulent conversion, must be found as a matter of fact by the jury, and not as a matter of law by the court. Such also was the ruling of the court in Pollard v. State, 33 Texas Crim. Rep., 197. There a charge was given by the court in respect to the presumption arising in reference to the recent possession of stolen property, which was held to be upon the weight of the evidence, and to throw the burden upon the accused to overcome the presumption of guilt. In this case there was no possible suggestion in the court's charge of any opinion touching the matter in controversy. The court did undertake to state, and we think fairly stated, the contention of the respective parties with a view of making clear to the jury the nature of appellant's defense, and to give him, as the charge did give him, a clear submission of the issue tendered by him, that the $75 check alleged to have been stolen had been given him by Logan and retained with his consent. It will be noted that the charge complained of is wholly defensive, nor is there any hint in the charge that, if they did not find appellant's contention to be true, that this would justify them in finding him guilty, but they would still, under the preceding paragraphs of the court's charge, be required to find, beyond a reasonable doubt, every fact essential under the law to his guilt.

3. Appellant's next contention is that the court erred in not charging the doctrine of circumstantial evidence. In this there was no error. The rule is universal that where an appellant testifies, and admits the possession of stolen property, but claims that his possession thereof was obtained in such manner as not to constitute theft, the case is not one of circumstantial evidence. Henderson v. State, 14 Texas, 503; Smith v. State, 35 Texas Crim. Rep., 618; 34 S. W. Rep., 960; Rodgers v. State, 36 Texas Crim. Rep., 563; High v. State, 54 Texas Crim. Rep., 333; 112 S. W. Rep., 940.

4. The court did not err in not instructing the jury that the witness Harris was an accomplice, and that appellant could not be convicted upon his testimony unless corroborated by other evidence. There is nothing in the record, as we read it, to indicate that Harris was an accomplice, or to raise this issue. His only connection with the mat-

ter was his presence, though not participating in the game, during some part of the night when the check was stolen, and the fact that the next morning, as an accommodation to appellant, he cashed the check in question.

5. Again, appellant contends that the court erred in refusing to give in charge to the jury the following special instruction: "If you should find and believe from the evidence that the prosecuting witness, Newt Logan, wadded up and threw down on the floor a certain $75 check, and that in doing so he intended to and did abandon said check, then you are instructed that the defendant, under no circumstances, could be convicted of the theft of said abandoned check, as the same could not be the subject of theft; and in this connection you are instructed that the word 'abandon' means the giving up; a total desertion; an absolute relinquishment; property may be said to be abandoned when the owner throws it away, or when it is voluntarily left or lost without any intent or expectation to regain it." We do not think the doctrine of abandonment of property was in this case. Judge Hurt, in the case of Sikes v. State, 28 S. W. Rep., 688, states with his usual clearness the essential elements of abandonment of property. He there says: "The word 'abandon' means a giving up; a total desertion; an absolute relinquishment. Abandonment includes both the intention to forsake or abandon and the act by which such intention is carried into effect. Property may be said to be abandoned when the owner 'throws it away,' or when it is voluntarily left or lost, without any intent or expectation to regain it." It is essential, in order to raise the issue of abandonment, that there must be a concurrence of the intention to abandon, and an actual relinquishment of the property, so that it may be appropriated by the next comer. Such is the definition given in Cyclopædia of Law and Procedure, volume 1, page 4, where it is stated: "To constitute abandonment in respect of property there must be a concurrence of the intention to abandon and actual relinquishment of the property, so that it may be appropriated by the next comer." We can conceive of no distinction between a case where an owner of a check drops the check unintentionally and where he throws the paper on which it is written away in the belief that it is so mutilated as not to be the subject of use. In this case the evidence does not raise the issue of an *intention* to abandon the property and give up the right to it, nor can it be conceded that there is a concurrence of the mind so that it may be had or taken by the next comer.

6. Finally, it is contended that there is a variance between the check set out in the indictment and that introduced in evidence. The original check has been sent up with the record for our inspection. It was drawn on a blank check of the Collin County National Bank, McKinney, Texas. There is a pencil mark written partly under and partly through the words, "McKinney, Texas," and just under them is written the words, "Farmersville, Tex." The words "Collin County National Bank" were entirely erased, and over them was written "Farmers &

Merchants Nat. Bank." There was no Farmers & Merchants National Bank at McKinney. There was such a bank at Farmersville. The object of variance is to avoid surprise. Both appellant and Logan testified that the check was intended to be written on the Farmers & Merchants National Bank of Farmersville. There was no question raised by any person as to the bank the check was drawn on until raised here. We do not think the application of the doctrine of variance can avail appellant in this case. An inspection of the check convinces us that the words "McKinney, Texas," were erased.

7. There are a number of other matters raised on appeal, but the matters we have discussed are the only questions which we deem of sufficient importance to notice. Appellant, so far as we can see from the record, seems to have had a fair trial. The evidence of the State, if to be believed, shows him guilty.

Finding no error in the record, it is ordered that the judgment of conviction be, and the same is, hereby affirmed.

*Affirmed.*