ACCEPTED
03-15-00445-CR
8003651
THIRD COURT OF APPEALS
AUSTIN, TEXAS
11/30/2015 9:14:38 AM
JEFFREY D. KYLE
CLERK

No. 03-15-00445-CR

IN THE COURT OF APPEALS
FOR THE THIRD JUDICIAL DISTRICT OF
TEXAS AT AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

11/30/2015 9:14:38 AM

JEFFREY D. KYLE
Clerk

********

# RONICESHA CHERRON WEARREN

## VS.

# THE STATE OF TEXAS
********

ON APPEAL FROM THE 426th DISTRICT COURT
OF BELL COUNTY, TEXAS
Cause No. 73,714

******

## STATE'S BRIEF
******

HENRY GARZA
DISTRICT ATTORNEY

BOB D. ODOM
ASSISTANT DISTRICT ATTORNEY
P.O. Box 540
Belton, Tx 76513
(254) 933-5215
FAX (254) 933-5704
DistrictAttorney@co.bell.tx.us
SBA No. 15200000

*Oral Argument Not Requested*

1

# TABLE OF CONTENTS

**ITEM**                                                                                      **PAGE**

Index of Authorities .................................................................................      3

Statement Regarding Oral Argument .......................................................      4

Statement of the Case ...........................................................................      4

Statement of Facts ................................................................................      5

Summary of State's Argument ...............................................................      9

Argument and Authorities .....................................................................     10

    First Issue on Appeal ...................................................................     10
        WAS EVIDENCE SUFFICIENT TO PROVE
        VALUE OF THE PROPERTY?

        Standard of Review .........................................................     10

        Application and Analysis .................................................     11

    Second Issue on Appeal ................................................................     13
        WAS EVIDENCE SUFFICIENT TO PROVE
        PROPERTY UNLAWFULLY APPROPRIATED
        WITH INTENT TO DEPRIVE THE OWNER?

        Standard of Review .........................................................     14

        Application and Analysis .................................................     14

Prayer .................................................................................................     19

Certificate of Compliance with Rule 9 .............................................     20

Certificate of Service ...........................................................................     20

# INDEX OF AUTHORITIES

**CASES**                                                                    **PAGE**

*Brooks v. State*, 323 S.W.3d 893 (Tx. Cr. App. 2010) ........................    11

*Godinez v. State*, No. 08-12-00218-CR, 2014 Tex. App. ...................    16
    LEXIS 10524 (Tx. App. El Paso 8th Dist. 2014 no pet.),
    not designated for publication)

*Ingram v. State*, 261 S.W. 3d 749 .......................................................    17
    (Tx. App. Tyler 12th Dist. 2008 no pet.)

*Isassi v. State*, 330 S.W.3d 633 (Tx. Cr. App. 2010) .........................    11

*Jackson v. Virginia*, 443 U.S. 307 (1979) .......................................... 10, 11

*McGee v. State*, 715 S.W.2d 838 ......................................................... 12, 13
    (Tx. App. Houston 14th Dist. 1986 no pet.)

*Sullivan v. State*, 701 S.W.2d 905 (Tx. Cr. App. 1986) ........................    12

*Williams v. State*, 235 S.W.3d 742 (Tx. Cr. App. 2007) ....................    11

*Worsham v. State*, 120 S.W. 439 (Tx. Cr. App. 1909) ........................    17


**OTHER**

*Texas Penal Code*

    Section 1.07(a)(35) .....................................................................    18

    Section 31.08 ............................................................................    13

    Section 31.08(a) ..................................................................... 11, 13

# STATEMENT REGARDING ORAL ARGUMENT

The only issues in this case are the sufficiency of the evidence to prove value and to prove the culpable mental state. The record is clear and the law is settled. The briefs of the parties are complete and there is no need for oral argument. The State does not desire oral argument and respectfully requests that the Appellant's request for oral argument be denied.

# STATEMENT OF THE CASE

The Appellant, Ronicesha Cherron Wearren, was charged by indictment with the state jail felony offense of theft. The indictment alleged that she unlawfully appropriated, by acquiring or exercising control over property, to-wit: fence panels, of the value of $1,500 or more but less than $20,000, from Juan Rodriguez, the owner thereof, without the effective consent of the owner and with the intent to deprive the owner of the property. (CR-4).

She was tried before a jury in the 426th District Court of Bell County, Texas, Judge Fancy Jezek presiding. The jury found her guilty as charged in the indictment. (CR-28; RR7-35). The same jury assessed her punishment at 14 months in state jail. (CR-32; RR7-55).

4

The Appellant gave timely notice of appeal (CR-36) and the trial court certified her right to do so. (CR-34).

## STATEMENT OF FACTS

Juan Rodriguez purchased a 5.4 acre lot in a residential development in Killeen called Creek Place. (RR5-23, 31). It was surrounded by occupied residences. (RR5-23). Mr. Rodriguez began working to clear the land in order to have a house built on it. (RR5-23). He kept a large white truck, a backhoe, and a small tractor called a Skid Steer on the property which he used to remove brush. (RR5-24). The lot was fenced in on three sides by the neighbors' fences. (RR5-52).

Mr. Rodriguez, who had retired from the military after ten years as a mechanic (RR5-22, 47), agreed to do some mechanical work on a vehicle belonging to a friend and, in exchange for his work, agreed to take in trade some 25 fence panels to be used to fence in the front of his property. (RR5-24, 25). He estimated the value of his work for his friend at around $3,000.00. (RR5-25).

Rodriguez and his wife took the fence panels to the property and stacked them up against a tree that was about 160 feet from the street. (RR5-31, 39; RR6-96). They chose that location purposely in order to

keep them away from the street and keep them out of the dirt and any moisture so they would not rust. (RR6-96). They did not leave any of the panels laying down in the grass nor near the street. (RR5-37; RR6-96).

On Tuesday Mr. Rodriguez and a friend worked on the land until sometime late in the evening. When they left the fence panels, vehicles, and other items were in place on the property. (RR5-60). When he returned the following Sunday, however, Rodriguez found his fence panels gone, as well as a pop-up deer blind and some propane heaters, tanks, and chairs that had been inside the blind. (RR5-65). He reported the incident to the Bell County Sheriff's Office. (RR5-44).

Early the next morning, Mr. Rodriguez went to Centex Scrap and Metal to see if they had seen his fence panels. (RR5-45). He spoke to employee Damien Deville who confirmed that a regular customer had brought in fence panels but declined to name that person. Rodriguez notified the Sheriff's Office. (RR5-46, 87; RR6-24, 25).

Bell County Deputy Sheriff Justin Kelly went to Centex Scrap and Metal and spoke to Deville. Deville identified pictures of the fence panels that Rodriguez had provided to the officer. (RR6-27). Deville confirmed that he had bought them from a regular customer and had

noticed that they did not fit into her minivan. (RR5-87; RR6-28). While Deputy Kelly was taking his statement, Deville advised that the customer and the van in question was, at that moment driving over the scales. (RR6-29).

The Deputy confronted the Appellant, who was the occupant of the van and she readily admitted that she had taken the fence panels from the lot in Creek Place subdivision and had sold them to Centex. (RR6-29, 30, 31). She had delivered two loads of fence panels to them that Sunday. She admitted that she did not have permission to enter the property. (RR6-30). The Appellant claimed that two of the fence panels had been near the road and she had concluded that they had been abandoned. (RR6-31, 42). She also admitted, however, that she had then walked upon the property and rounded up the remaining panels that she claimed were scattered among the grass on the lot. She admitted taking other "scrap" but could not remember what it was. (RR6-41). The Appellant led the Deputy to the place where she had acquired the fence panels. It was Mr. Rodriguez' lot. (RR6-38, 39).

The fence panels had been quickly crushed into a metal block at the scrap yard. Only two or three remained on the property. (RR5-50).

Juan Rodriguez did not know whether the fence panels he had received in exchange for his mechanic work were new or used. (RR5-30). He did know that they had originally come from Lowe's Home Improvement Center. (RR6-47). The panels were not available for inspection due to the actions of the scrap yard after they were sold to them by the Appellant. Deputy Kelly checked with Lowe's and found the cost to replace the fence panels that were taken to be $4,000.00. (RR6-48, 49).

At trial the Appellant testified. She admitted that she took the fence panels from the lot and scrapped them. (RR6-71). She claimed that she saw two panels near the road and believed them to be abandoned. She then walked further onto the property and saw fence panels laying in the grass that were the same and assumed that they must also have been abandoned. (RR6-71, 72, 77, 82). She conceded, however, that they did look as if they had been stacked up. (RR6-77). She and her 7 year old son carried all of the fence panels to a place near the road and then took two trips to take them all to the scrap yard to sell. (RR6-72, 74, 75). She claimed that she greeted a neighbor but did not inquire of her concerning the ownership of the property. (RR6-86, 87). Instead, she assumed that the lot was just an illegal dump site in

spite of the fact that is was surrounded by occupied houses. (RR6-72, 83). She denied that the truck, backhoe, and tractor were there at the time. (RR6-89, 90).

Juan Rodriguez, the owner of the lot and the fence panels, did not know the Appellant and did not give her permission to take them. (RR5-48).

Sheriff's Deputy Jason Davis, who regularly patrols the area described Creek Place as a subdivision that had been about 90% developed with houses on the majority of the lots. He described the homes there as "high end". The only entrance or exit to the subdivision was clearly marked with a sign identifying it as "Creek Place". (RR5-71, 72, 82, 83).

## SUMMARY OF STATE'S ARGUMENT

The owner did not know whether the property was new or used and had taken it in trade for labor. Due to the actions of the Appellant they were unavailable for inspection and a determination of value. Because the fair market value could not be ascertained, the proper standard for determining the value of the property was the cost to

replace.  The evidence was sufficient to prove the value as alleged in the indictment.

The evidence that the Appellant entered upon the real property of the owner without his consent and removed his personal property and sold it for her own profit was sufficient for a rational jury to conclude that she unlawfully appropriated the property with the intent to deprive the owner.

## ARGUMENT AND AUTHORITIES

### First Issue on Appeal

Was the evidence sufficient to prove beyond a reasonable doubt that the value of the property taken was $1,500 or more, but less than $20,000?

### Standard of Review

Due process of law requires that the State prove, beyond a reasonable doubt, every element of the offense charged in the indictment. *Jackson v. Virginia*, 443 U.S. 307, 313 (1979).  In reviewing the sufficiency of the evidence to support the conviction the court must consider all of the evidence in the case in the light most favorable to the verdict in order to determine whether, based upon the evidence and

reasonable inferences therefrom, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W. 3d 893, 899 (Tx. Cr. App. 2010).

In reviewing the evidence in the light most favorable to the verdict, the court must presume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences from that evidence in a manner that supports the verdict. *Jackson* at 318. The court must consider only whether the fact finder reached a rational decision. *Isassi v. State*, 330 S.W.3d 633, 638 (Tx. Cr. App. 2010).

The weight and credibility of the evidence is solely for the fact finder and the court will not re-evaluate those matters nor substitute its judgment for that of the fact finder. *Isassi* at 638; *Williams v. State*, 235 S.W.3d 742, 750 (Tx. Cr. App. 2007).

### Application and Analysis

Section 31.08(a) of the *Texas Penal Code* provides that, with respect to theft cases, value is the fair market value of the property at the time and place of the offense, or, if the fair market value cannot be ascertained, the cost of replacing the property within a reasonable time after the theft. Thus where fair market value cannot be ascertained, replacement cost is the proper measure of value.

In this case the owner did not purchase the fence panels, but took them in trade for his labor. He testified that he did not know if the fence panels were new or had been used or how old they were. Because the Appellant sold them to a scrap yard that immediately crushed them into a metal brick they were unavailable for examination and an estimation of value. Their fair market value could not be ascertained.

The investigating officer inquired at Lowes, the original source of the fence panels and learned that the total replacement cost of the fence panels taken by the Appellant was $4,000.00. (CR6-50). The Appellant offered no evidence to contest or contradict that figure.

A similar case is *McGee v. State*, 715 S.W.2d 838 (Tx. App. Houston 14th Dist. 1986 no pet.). In that case furniture was stolen from a rental furnished apartment. It was never recovered. The owner testified that he had no idea when he had seen the furniture last and could not testify as to its age or condition at the time it was stolen. He did ascertain and testify as to the cost to replace the furniture. *McGee* at 839.

Citing *Sullivan v. State*, 701 S.W.2d 905, 909 (Tx. Cr. App. 1986), the court noted that an owner could testify to the value of his property, either as to fair market value or replacement cost. Under the facts of the case the court held that the fair market value could not be ascertained

12

because the furniture was not recovered and, ignorant of its condition or age, the owner could not testify to such value. Therefore, it was proper to testify to the cost to replace and the evidence as to value was sufficient and the jury properly instructed to consider replacement cost.[1] *McGee* at 840.

In this case the owner, Juan Rodriguez, acquired the fence panels in trade. He did not know their age or if they had been previously used. He valued the work he did for his friend in exchange for the fence panels at $3,000.00. The Deputy Sheriff contacted the home center where the panels were originally obtained and found the cost to replace to be $4,000; well in excess of the $1,500.00 minimum for state jail felony theft. The evidence was certainly sufficient, when viewed in the light most favorable to the verdict, for a rational jury to find that the value of the property taken was between the amounts charged in the indictment.

## *Second Issue on Appeal*

Was the evidence insufficient to prove beyond a reasonable doubt that the Appellant unlawfully appropriated the property with the intent

---

[1] In this case the jury was instructed, without objection by Appellant, as to the provisions of Section 31.08 regarding value. (CR-24).

13

to deprive the owner of the property because the Appellant testified that she thought it had been abandoned?

## *Standard of Review*

The standard of review is identical to the first issue on appeal.

## *Application and Analysis*

The Appellant, relying entirely upon her own testimony, contends that the evidence was insufficient to prove that she had the intent to deprive the owner of the property because she thought it was abandoned.  She utterly ignores the rest of the evidence in the case. While she concedes that intent may be shown from her acts and words, she only views them with respect to her own self-serving interpretation.

The Appellant claimed that she had found two of the more than twenty fence panels near the road and concluded that they must have been abandoned.  Then, entering far into Mr. Rodriguez' lot, she saw the other fence panels and apparently reasoned that if the two by the roadway were abandoned, the remaining identical panels must also have been abandoned.  Claiming that the truck, backhoe, and other equipment were not on the lot, and ignoring the occupied homes surrounding the lot, she also decided that it was an illegal dumping ground.  She and her son then went all about the lot collecting the fence

panels, hauling them to the road and making two trips in order to sell them to the scrap metal yard.

On the other hand, Juan Rodriguez, the owner of the lot and of the fence panels, testified that he was in the process of clearing the lot in preparation for building a house on it.  His truck, backhoe, and tractor used in that project were on the lot.  He had obtained the metal fence panels in order to fence the front of the lot and he and his wife had carefully stacked them 160 feet away from the road and against the trees to protect them from the elements.  He stated that he did not ever abandon that property, but rather trusted that they would be safe there for use in the project.

The Appellant's acts which point to an intent to deprive the owner of the property include going on to his lot in a residential subdivision without seeking permission or even inquiring concerning its ownership; rounding up a large number of fence panels from deep within the lot and dragging them to the road; hauling them down to the scrap metal salvage yard in two separate loads; and selling them for her own profit. Her self-serving protestations after the fact that she thought the lot was an illegal dump ground, and that she determined the all of the fence panels found some 160 feet inside the lot were abandoned, do not

negate her actions. She simply ignores everything she did and relies on her own interpretations of it, which were rejected by the jury.

The jury was the exclusive judge of the facts proven and the weight to be given to the testimony and it obviously accepted as true Rodriguez' testimony. The mere fact that the Appellant testified that she believed the panels to have been abandoned did not obligate the jury to accept that testimony. The test is whether or not there was sufficient evidence for a rational jury to find that the Appellant appropriated the property with the intent to deprive the owner of it. Deference must be given to the determination of the jury and if the record contains conflicting inferences, the court must presume that the jury resolved those facts in favor of the verdict and must defer to that resolution. *Brooks* at 894-95.

In *Godinez v. State*, No. 08-12-00218-CR, 2014 Tex. App. LEXIS 10524 (Tx. App. El Paso 8th Dist. 2014 no pet.), not designated for publication, the defendant similarly relied upon his own testimony that he took property that had been discarded and abandoned. The owner, however, testified that such was not the case. The court of appeals held that the jury was the judge of the credibility of the witnesses and had the sole responsibility to resolve conflicts between the witnesses for the

State and defendant and, viewing the evidence from the standpoint most favorable to the jury and in light of the jury's determination in favor of the State, the evidence was sufficient.

In this case, moreover, the Appellant admittedly went upon the land owned by Mr. Rodriguez and took property she deemed to have been abandoned. A similar situation occurred in *Ingram v. State*, 261 S.W.3d 749 (Tx. App. Tyler 12th Dist. 2008 no pet.). There the defendant went upon the real property of the owner and entered a structure where he took property, claiming that it had been abandoned. On Appeal he complained about the trial court's denial of a charge on mistake of fact on that basis.

Citing *Worsham v. State*, 120 S.W. 439 (Tx. Cr. App. 1909), the *Ingram* court noted that the word "abandon" means a giving up, a total desertion, an absolute relinquishment; and includes both the intention to abandon and an act by which that intention is carried into effect. The court said that it is essential in order to raise the issue of abandonment, that there be a concurrence of the intention to abandon and an actual relinquishment of the property in order that it may be appropriated by "the next comer." The court stated that an individual may abandon his

17

property and, upon abandonment, it is the property of no one until it possessed with the intention to acquire title. *Ingram* at 753.

However, while it is possible to acquire abandoned without committing theft, theft is committed where the defendant unlawfully acquires property with the intent to deprive the owner of the property. The owner is a person who has title to property, possession of property, whether lawful or not, or a greater right to possession of property than the actor. Section 1.07(a)(35), *Texas Penal Code*. If, therefore, a person enters private property without the consent of the owner and takes possession even of abandoned property, he nevertheless commits a wrongful act and no title to the property is created in him because the owner of the real property where the stolen personal property is found has a greater right to possession than does the trespasser and is thus the owner of that personal property and the taking deprives him of it. *Ingram* at 754. Nothing in the evidence shows an intention of the part of Mr. Rodriguez to abandon his property nor a concurrent act of abandonment. Instead, it shows every intention to retain and use that property.

There was ample evidence for a rational jury to find that the fence panels had not been abandoned by their owner and that the Appellant

unlawfully appropriated them with the intent to deprive the owner of them. Further, even had the panels been abandoned there is no question that they were located on the real property of Mr. Rodriguez and that the Appellant entered upon the real property and took them without his consent. She thus unlawfully took the property with the intent to deprive Mr. Rodriguez who, as the person with the greater right to possession of the panels was the owner, with the intent to deprive him of them.

## PRAYER

The State of Texas respectfully prays that the judgment of conviction herein be, in all things, be affirmed.

Respectfully Submitted,

HENRY GARZA
District Attorney

/s/ *Bob D. Odom*
BOB D. ODOM
Assistant District Attorney
P.O. Box 540
Belton, Tx 76513
(254) 933-5215
FAX (254) 933-5704
DistrictAttorney@co.bell.tx.us
SBA No. 15200000

# CERTIFICATE OF COMPLIANCE WITH RULE 9

This is to certify that the State's Brief is in compliance with Rule 9 of the *Texas Rules of Appellate Procedure* and that portion which must be included under Rule 9.4(i)(1) contains 3,148 words.

/s/ *Bob D. Odom*
BOB D. ODOM
Assistant District Attorney

# CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of this brief has been served upon, Kristen Jernigan, Counsel for Appellant, by electronic transfer via Email, addressed to her at Kristen@txcrimapp.com on this 30th day of November, 2015.

/s/ *Bob D. Odom*
BOB D. ODOM
Assistant District Attorney