

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-19-00010-CR

PEDRO WALTER GARCIA, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law No. 2
Williamson County, Texas
Trial Court No. 18-04804-2

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Burgess

MEMORANDUM OPINION

A Williamson County jury found Pedro Walter Garcia guilty of theft of property valued at $750.00 or more, but less than $2,500.00, a Class A misdemeanor.[1]  *See* TEX. PENAL CODE ANN. § 31.03(e)(3).  Garcia was sentenced to 180 days' confinement in county jail.  On appeal, Garcia argues that the evidence is insufficient to prove (1) that he committed theft when he pocketed an allegedly abandoned cell phone and (2) that the cell phone was worth over $750.00.  Because we find the evidence legally sufficient to support Garcia's conviction, we affirm the trial court's judgment.

## I.     Standard of Review

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt.  *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd).  Our rigorous legal sufficiency review focuses on the quality of the evidence presented.  *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring).  We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate

---

[1]Originally appealed to the Third Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts.  *See* TEX. GOV'T CODE ANN. § 73.001.  We follow the precedent of the Third Court of Appeals in deciding this case.  *See* TEX. R. APP. P. 41.3.

facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

"A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property." TEX. PENAL CODE ANN. § 31.03(a). "Appropriate" means "to acquire or otherwise exercise control over property other than real property," TEX. PENAL CODE ANN. § 31.01(4)(B), and appropriation is unlawful if "it is without the owner's effective consent," TEX. PENAL CODE ANN. § 31.03(b)(1). The offense also requires an "intent to deprive at the time of the taking." *Griffin v. State*, 614 S.W.2d 155, 159 (Tex. Crim. App. [Panel Op.] 1981). As defined by the Texas Penal Code, "deprive" means "to withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner" or "to dispose of property in a manner that makes recovery of the property by the owner unlikely." TEX. PENAL CODE ANN. § 31.01(2)(A), (C). An offense is a Class A misdemeanor if the value of the property is $750.00 or more, but less than $2,500.00. TEX. PENAL CODE ANN. § 31.03(e)(3).

3

Here, the State alleged that Garcia unlawfully appropriated a cell phone valued at $750.00 or more, but less than $2,500.00, from owner David Firmage, without his effective consent and with the intent to deprive Firmage of the cell phone. Garcia challenges (1) whether the evidence was legally sufficient to prove that the appropriation of Firmage's cell phone was unlawfully made with the intent to deprive Firmage of the property and (2) whether the value of the cell phone was $750.00 or more.

## II. The Evidence at Trial

The evidence demonstrated that Firmage's Samsung Galaxy S9 cell phone, which was encased in a "black otterbox," was taken at the Taylor, Texas, Department of Motor Vehicles office (DMV) while he was filing paperwork to obtain a Texas driver's license. Firmage testified that Garcia and his wife, Janna Kramlich, entered the DMV and sat within three feet of Firmage as he was completing the paperwork. When Firmage walked to the front of the room to submit the paperwork, he realized he did not have his cell phone. Firmage had used his cell phone to obtain directions to the DMV and walked to his car on belief that he may have left his cell phone there. In doing so, Firmage noticed that Kramlich was gone and Garcia was standing outside smoking a cigarette. Firmage testified that no one else had exited the DMV except for Garcia and Kramlich.

Unable to find the cell phone, Garcia asked a DMV employee to call it, but it did not ring in the office. Garcia walked upstairs to the sheriff's office to report the phone stolen. An officer called Firmage's cell phone, but no one answered. He asked the officer to call it again so he could run to the car to see if it was there. While in the parking lot, he now noticed that Garcia and Kramlich were back inside of the DMV office. Suspicious of the couple, Firmage waited for

4

Garcia and Kramlich to leave the DMV in a Ford Explorer, wrote down the license plate number, and reported to Keely Adcock, an officer with the Taylor Police Department, his belief that they had taken his cell phone.

Firmage provided the serial number of the cell phone to Adcock, who recovered the phone that day. Adcock testified that a search of the license plate number database determined that Kramlich was the Explorer's registered owner. Adcock spoke with Kramlich over the phone and requested a return phone call from Garcia. Garcia called Adcock and admitted that he had the cell phone, but claimed "he had accidentally picked it up because he thought it was his." According to Adcock, Garcia directed a third party to return the phone to the police department.

Although retrieved, the cell phone's SIM card, which contained Firmage's personal information, was removed and a "factory reset" was performed on the cell phone. According to Adcock, these actions indicated that someone intended to keep the cell phone for their own use.

## III. Legally Sufficient Evidence Support's Garcia's Conviction

### A. Legally Sufficient Evidence Shows the Appropriation Was Unlawful

Firmage testified he must have accidentally left his cell phone on the DMV desk where he was filling out paperwork. Based on this fact, Garcia argues that his appropriation of the cell phone was lawful because Firmage abandoned it. We disagree.

"It is possible to take possession of abandoned property without committing a theft or intending to commit a theft." *Ingram v. State*, 261 S.W.3d 749, 754 (Tex. App.—Tyler 2008, no pet.). However, "[t]he word 'abandon' means a giving up, a total desertion, an absolute relinquishment." *Id.* at 753 (citing *Worsham v. State*, 120 S.W. 439, 443 (Tex. 1909); *Fender v.*

5

*Schaded*, 420 S.W.2d 468, 473 (Tex. App.—Tyler 1967, writ ref'd n.r.e.)). "Abandonment includes both the intention to forsake or abandon and the act by which such intention is carried into effect." *Id.* "It is essential, in order to raise the issue of abandonment, that there must be a concurrence of the intention to abandon and an actual relinquishment of the property, so that it may be appropriated by the next comer." *Id.* (quoting *Worsham*, 120 S.W. at 444).

Firmage specifically testified that he did not intend to abandon his cell phone. Evidence of his frantic search for his cell phone and his immediate report of theft to the police further demonstrated that he did not intentionally relinquish it. Simply put, nothing showed that the cell phone was abandoned property.

Next, Garcia claims that his appropriation of the cell phone was lawful because it was lost property. He cites *State v. $281,420.00 in United States Currency*, which defined lost property as "that which the owner has involuntarily parted with through neglect, carelessness or inadvertence." *State v. $281,420.00 in United States Currency*, 312 S.W.3d 547, 553 (Tex. 2010) (quoting *Schley v. Couch*, 284 S.W.2d 333, 335 (Tex. 1955)). Here, Firmage's cell phone was not lost property. Although he briefly left the cell phone on the DMV's desk while filling out paperwork, the act of leaving the phone was not the reason it disappeared from Firmage's sight. It was Garcia's act in picking up the cell phone as Firmage stood in line that resulted in its disappearance. In any case, even under the lost property doctrine, the finder of lost property does not retain possession against the lost property's true owner. *Id.*

The theft statute states, "Appropriation of property is unlawful if . . . it is without the owner's effective consent." TEX. PENAL CODE ANN. § 31.03(b)(1). It remains undisputed that

6

Firmage did not consent to Garcia's taking of the cell phone. Accordingly, we reject Garcia's first argument.

**B.     The Evidence is Legally Sufficient to Prove Garcia Had an Intent to Deprive**

"Intent to deprive must be determined from the words and acts of the accused." *Griffin*, 614 S.W.2d at 159; *see King v. State*, 174 S.W.3d 796, 810 (Tex. App.—Corpus Christi 2005, pet. ref'd). Garcia argues that the evidence is insufficient to show that he intended to deprive Firmage of the cell phone because he returned it to Adcock after claiming that he thought the phone was his. If a defendant had an intent to deprive the owner of the property at the time of the taking, "[t]he fact that the deprivation later became temporary does not automatically mean that there was no intent to deprive permanently or for so long as to satisfy the statutory definition." *Griffin*, 614 S.W.2d at 159 (determining the evidence was sufficient to support a finding that the defendant had the intent to deprive a taxicab owner of his property even though he only drove the taxicab a few miles before leaving it parked on a street).

Here, legally sufficient evidence supported the jury's finding that Garcia intended to deprive Firmage of the property when he took it. The jury heard that Garcia and Kramlich were seated within three feet of Firmage as he was filling out DMV paperwork. Firmage got up from the desk, stood in line to turn in the paperwork, and soon noticed that his cell phone was missing. By the time he asked the DMV employee to call his phone, it had been removed from the DMV. Firmage testified that Garcia and Kramlich were the only people to leave the DMV. This showed that Garcia watched Firmage get up from the desk, reached "within three feet" to Firmage's former position at the DMV to take the phone, and exited the building with Kramlich even though Firmage

7

was in line. The fact that Garcia would have been required to extend his reach to swipe the phone could have supported the jury's rejection of Garcia's claim to Adcock that he believed the phone was his.

Events occurring after the phone was taken also supported the finding that Garcia intended to deprive Firmage of the cell phone at the time it was taken. Kramlich disappeared while Garcia was smoking a cigarette just after the cell phone's disappearance. Because the couple soon were inside the DMV, the jury could have found Kramlich had placed the cell phone in the Explorer and then returned to finish business at the DMV. Although the cell phone was on when Firmage arrived at the DMV, no one answered the phone after it was taken. The jury could have determined that Garcia did not answer the phone to avoid returning it.

Also, although the phone was eventually retrieved, the SIM card had been removed and was never returned. Garcia argues that this evidence only demonstrates unlawful appropriation of the SIM card. We disagree. When determining whether there was the requisite intent to commit theft, the fact-finder can also consider whether the defendant obtained a personal benefit from acquiring the property. *Christensen v. State*, 240 S.W.3d 25, 32 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). Garcia personally benefitted from retaining the SIM card. According to Adcock, the act of removing the SIM card and conducting a factory reset on the phone indicated Garcia's intent to keep the phone.

Given this evidence, which we view in the light most favorable to the verdict, we conclude it legally sufficient to support the jury's finding that it was Garcia's intention to deprive Firmage of the cell phone when he unlawfully appropriated it.

8

**C.    Legally Sufficient Evidence Supports the Valuation of the Property**

Last, Garcia argues that the evidence is legally insufficient to prove the cell phone's value. In determining the category of theft, property is valued at "(1) the fair market value of the property or service at the time and place of the offense; or (2) if the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the theft."[2] TEX. PENAL CODE ANN. § 31.08(a).  Fair-market value means the amount of money that "the property would sell for in cash" if the owner was given a reasonable amount of time to sell it.  *Keeton v. State*, 803 S.W.2d 304, 305 (Tex. Crim. App. 1991); *see Valdez v. State*, 116 S.W.3d 94, 98 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd).

Firmage testified that he had just purchased the new cell phone from AT&T three days before it was lifted by Garcia.  Although he could not state the exact amount paid for the phone, Firmage testified, "I know it's on a payment plan like most cell phone companies these days, you pay monthly for it.  I paid the tax up front, so I'm -- whatever the tax is on a, you know, a 750, $800 dollar phone."  Adcock testified that he spoke with Firmage's cell phone carrier to determine that the phone was worth $792.00, but identified the carrier as Sprint.

Garcia argues that this testimony was insufficient because Firmage did not know the actual purchase price of the cell phone, there was no testimony of the fair-market value of a used Samsung Galaxy 9S, and Adcock's testimony was of replacement cost from Sprint, not AT&T.  We reject Garcia's argument because Firmage was not required to provide the exact dollar amount of the cell

---

[2]If the property "has value that cannot be reasonably ascertained by th[ese] criteria . . . , the property or service is deemed to have a value of $750 or more but less than $2,500."  TEX. PENAL CODE ANN. § 31.08(c).

9

phone and Adcock's testimony, admitted without objection, was not required to state only AT&T's retail price.

Methods of proving value include admitting the testimony of an owner's opinion of the value of the property, admitting expert testimony from a non-owner, or admitting evidence of the retail price or sale price. *See Keeton*, 803 S.W.2d at 305; *Ray v. State*, 106 S.W.3d 299, 301 (Tex. App.—Houston [1st Dist.] 2003, no pet.). "When the owner of the property is testifying as to the value of the property, he may testify as to his opinion or estimate of the value of the property in general and commonly understood terms." *Ray*, 106 S.W.3d at 301; *see Holz v. State*, 320 S.W.3d 344, 351 (Tex. Crim. App. 2010). In addition, an owner may testify regarding the purchase price or replacement cost and is presumed to be testifying regarding an assessment of the fair-market value. *Campbell v. State*, 426 S.W.3d 780, 783 (Tex. Crim. App. 2014); *Sullivan v. State*, 701 S.W.2d 905, 909 (Tex. Crim. App. 1986). Moreover, to rebut an owner's opinion regarding the value of the stolen property, the defendant "must offer controverting evidence as to the value of the property." *Sullivan*, 701 S.W.2d at 909.

Firmage estimated that the cell phone was a "750, $800 dollar phone." Because it was purchased just three days before it was stolen, this testimony was legally sufficient to establish its value. Additionally, Adcock's testimony, which was admitted without objection, showed that the retail price or replacement cost of the property was $792.00. Garcia did not present controverting evidence as to the value of the cell phone. Viewing the evidence in the light most favorable to the jury's finding, we conclude it sufficient to show that Firmage's phone was worth $750.00 or more.

10

We overrule all of Garcia's arguments related to his point of error on legal sufficiency of the evidence.

**IV.      Conclusion**

We affirm the trial court's judgment.


                                              Ralph K. Burgess
                                              Justice

Date Submitted:      August 7, 2019
Date Decided:        August 8, 2019

Do Not Publish